J. Howard Rossbach, J.
(dissenting). The unsuccessful complainant in a paternity action in this court now asks for a new trial on the ground of newly discovered evidence. At the trial an order of paternity was denied by a majority of the court. The undersigned dissented.
On this motion we must determine both whether the new evidence would warrant a new trial, and, if the evidence be sufficient, whether this court has the power to grant this motion where the complainant, rather than the defendant, is the moving party.
At the trial complainant was shown to be far from a model of virtue. Her life was a sordid story of having been “ kept ” successively by a number of men and was punctuated by a series of several abortions. Defendant, on the other hand, was shown to be a reputable and substantial businessman. Under these circumstances only the most extraordinary circumstances would justify the issuance of an order of paternity. They were present here.
The child was born on November 18, 1956. Complainant • claimed that conception took place on the week end of March 3-4, 1956, when she spent the week end with defendant at a certain room in a certain hotel in New York City. The undisputed fact, backed up by hospital records, is that, aside from this week end and the following one of March 10-11, complainant was a patient in the mental ward of a hospital for months before and months after any possible date of conception. Unless we accept the extremely unlikely suggestion that intercourse took place in a women’s ward of a hospital, we are driven to the conclusion that complainant became pregnant on one of the two March week ends.
Complainant stated that she spent the March 10-11 week end with a Mrs. Harry who corroborated her and swore that no men were present in her apartment on that occasion. This witness was a weak testimonial reed for complainant to lean upon, since on cross-examination her own lurid past was exposed. The main thrust of defendant’s attack, however, was that conception had taken place before March 3, since physical examinations of complainant on March 26 revealed her uterus to be enlarged one and one-half times normal size. Medical testimony was introduced to show that this indicated conception somewhat before March 3.
*727 Defendant admitted a prior illicit relationship with complainant. He admitted visiting complainant in the hospital twice in April, 1956. He denied spending the week end of March 3 with the complainant but conceded that he had spent that week end in the hotel described by complainant and had registered there under an assumed name. This he stated, was done for “ Business Reasons ” and to avoid complications with his wife from whom he was then living apart. He claimed that his only visitor was his brother.
He denied knowledge of claimant’s pregnancy in April. He further denied requesting Mrs. Harry to obtain a specimen of claimant’s urine and to submit it to a laboratory for a test of pregnancy. At the trial Mrs. Harry testified as to the above request but could not remember the name of the laboratory.
The trial court had to balance these statements and facts against the thorough attack upon the reputations of claimant and her key witness. A majority of the court voted to deny an order of filiation.
The new evidence now advanced as the basis for a new trial is the proffered testimony of a hospital nurse who allegedly overheard defendant in one of his April visits urging complainant to have an abortion. Also complainant now states she can prove that the laboratory urinalysis was ordered by defendant’s doctor. This additional proof might well have changed the result of the trial. The excuse for its nonproduction at the original trial appears sufficient. I believe that complainant’s motion should be granted as far as the merits are concerned.
Now we come to the question of whether this court has the power to grant a new trial on motion of complainant. No authority squarely in point is cited by either party and the case appears to be one of first impression.
It is urged that only the defendant — never the complainant — can move for a new trial. In support of this position there is cited subdivision 8 of section 31 of the New York City Criminal Courts Act which provides: “ The court of special sessions shall have power to grant a new trial where it is made to appear, by affidavit, that upon another trial the defendant can produce evidence such as, if before received, would probably have changed the verdict or judgment; if such evidence _ has been discovered since the trial, is not cumulative, and the failure tc produce it on the trial was not owing to want of diligence.”
The limitation on the power of the court to grant a new trial to those cases where the defendant offers to produce new evidence makes good sense in a criminal case. If the defendant *728 is acquitted on the original trial he cannot be retried, as any retrial would constitute double jeopardy. Thus after an acquittal on trial the prosecution can neither move for a new trial nor seek to appeal. Either course would be futile since the defendant is immune from retrial.
A paternity case stands on a somewhat different footing than a criminal case. Outside New York City where such cases are tried in Children’s Court the proceeding is civil in nature. Motions for a new trial are governed by civil practice (People v. Bowers, 9 Misc 2d 873). Unquestionably each party has an equal right to make the motion.
In New York City the proceeding becomes partially criminal in nature. Fundamentally this is accomplished by a process akin to that of osmosis in physics. Paternity cases are tried by a court of criminal jurisdiction and thus somehow they themselves come infused with criminality (Matter of Clausi, 296 N. Y. 354). This infusion is augmented by certain sections of the New York City Criminal Courts Act which specifically deal with paternity proceedings, and by sections of the Code of Criminal Procedure.
Notwithstanding the above aura of criminality there is a realization that the complainant in a paternity suit stands in a different position from the prosecution in a criminal case. Thus the complainant if unsuccessful is given the right of appeal (N. Y. City Crim. Cts. Act, § 76). The claim of double jeopardy is unavailable to the defendant in a paternity case (Hodson v. Hoff, 266 App. Div. 228, affd. 291 N. Y. 518). If double jeopardy will not prevent a retrial in a paternity case, why bar a complainant for asking for a retrial? Her rights are equal if she seeks a new trial by way of appeal. Why should they be different if she seeks it by motion? It is hard to believe that the Legislature intended such an anomaly. What is sauce for the gander should be sauce for the goose.
There has been growing recognition that not all the limitations of criminal trials are applicable to paternity suits. Procedural rules peculiar to criminal cases have been held not to apply to paternity cases (Duerr v. Wittmann 5 A D 2d 326 [1st Dept., March 11, 1958], and cases therein cited).
We hold that the limitation of retrial only on application of the defendant is not applicable to paternity eases for the reasons above stated. We further hold that this court, although a court of limited jurisdiction, has certain inherent powers which include the granting of a motion such as this (Matter of Hogan v. New York Supreme Ct., 295 N. Y. 92).
*729 Since any retrial would probably be a lengthy one, complainant should first produce her affiants for examination and cross-examination as provided in subdivision 8 of section 31 of the New York City Criminal Courts Act. The final decision as to the granting of a new trial should abide the outcome of that hearing.
Heller, J., concurs with Gtassman, J., in separate opinion; Rossbach, J., dissents in opinion.
Motion denied.